UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TORREY BROWN #386420                                          CIVIL ACTION

VERSUS                                                        NUMBER: 19-12641

JAMES LEBLANC, SECRETARY; ET AL.                              SECTION: "B"(5)

### REPORT AND RECOMMENDATION

Before the Court are the motions to dismiss of the Defendants, Secretary James LeBlanc ("LeBlanc") of the Louisiana Department of Public Safety and Corrections ("DOC"); Warden Robert Tanner ("Tanner") of the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana; Beverly Kennedy ("Kennedy"), the Assistant/Treatment Warden at RCC; Dr. Robert Cleveland ("Cleveland") of RCC; and, the RCC itself.  (Rec. docs. 12, 13, 14). Plaintiff has filed no memoranda in opposition to any of the motions.[1]  For the reasons that follow, it is recommended that Defendants' motions be granted and that Plaintiff's suit be dismissed.

Plaintiff, Torrey Brown, is an inmate at RCC following a May 7, 2009 conviction for two counts of attempted first-degree robbery, one count of simple robbery, and one count of carjacking in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana.  *See Brown v. Tanner*, No. 15-CV-7083 "G"(5)(28 U.S.C. §2254 proceeding challenging conviction).   Plaintiff alleges that in September of 2018, he attended a scheduled appointment with Dr. Cleveland to review blood test results after asking to be treated for hepatitis "B" and "C."  At said appointment, Dr. Cleveland explained that the

---

[1] As Plaintiff has filed no memoranda in response to Defendants' motions, timely or otherwise, the Court may properly assume that he has no opposition to them.  *Johnson v. Colvin*, No. 14-CV-0401, 2014 WL 4186790 at *1 n. 1 (E.D. La. Aug. 22, 2014)(citing Local Rule 7.5 and *Bean v. Barnhart*, 473 F.Supp. 2d 739, 741 (E.D. Tex. 2007)); *Jones v. Larpenter*, No. 13-CV-0056, 2013 WL 1947243 at *1 n. 1 (E.D. La. Apr. 12, 2013), *adopted*, 2013 WL 1947188 (E.D. La. May 10, 2013)(same); *Lucas v. Crowe*, No. 11-CV-2752, 2013 WL 870514 at *1 n. 1 (E.D. La. Feb. 15, 2013), *adopted*, 2013 WL 870437 (E.D. La. Mar. 7, 2013)(same).

recent lab results had come back "negative" for both viruses, contrary to "positive" diagnoses which had been made following previous appointments in 2012 through 2018. Notwithstanding the doctor's favorable diagnosis, Plaintiff indicates that he asked the doctor to be treated again for both hepatitis "B" and "C." In response, Dr. Cleveland advised Plaintiff that although his cholesterol level and liver count were slightly elevated, there was nothing to be alarmed about or to warrant further treatment "… because his body had cured itself of the disease." Nevertheless, Dr. Cleveland ordered yet another blood test to monitor the progression of the diseases even though, Plaintiff maintains, "… recent medical opinion holds that 'medical professionals cannot predict the rate of progression of fibrosis.'" (Rec. doc. 4-1, pp. 2-3).

As a result of the foregoing series of events, Plaintiff states that he filed a Step 1 grievance under RCC's Administrative Remedy Procedure ("ARP"), arguing that he was suffering from multiple symptoms related to hepatitis "B" and "C" and that he was in need of treatment for both illnesses. According to Plaintiff, Warden Tanner rejected his Step 1 grievance.[2/] Plaintiff indicates that he then submitted a Step 2 grievance to Secretary LeBlanc, "… arguing that [the] 2018 lab results which Dr. Cleveland had related a misdiagnosis of HBV and HBC totally contradicted Warden Tanner's [S]tep 1 response." On July 31, 2018, Secretary LeBlanc denied Plaintiff's Step 2 ARP.[3/] Subsequently, Plaintiff

---

[2/] Although Plaintiff purports to have attached a copy of the Warden's Step 1 response to his complaint (rec. doc. 4-1, p. 3), no such response is attached. What Plaintiff did provide to the Court is a "First Step Response Form" that was signed by Deputy Warden Keith Bickham on July 25, 2018 in which Bickham reported having reviewed Plaintiff's medical records, which he proceeded to briefly summarize, including lab work that was negative for the presence of hepatitis "B" and "C" and which warranted no treatment. (Rec. doc. 1, p. 7).

[3/] Here, again, despite purporting to have attached the Secretary's July 31, 2018 Step 2 response to his complaint what Plaintiff has provided to the Court is a "Second Step Response Form" denying relief that was signed on September 14, 2018, in which it was explained to Plaintiff that the medical care he had received was appropriate, adequate, and in accordance with DOC Health Care Policy. (Rec. doc. 1, p. 8).

states that he attended another appointment with Dr. Cleveland in early 2019, during which he was reportedly told that follow-up lab results had once again revealed the progression of hepatitis "B" and "C," thus contradicting the doctor's advices in September of 2018 that Plaintiff's body defense mechanisms had overcome the viruses. In light of the recent lab results, Plaintiff indicates that he again asked the doctor to treat him for the viruses but was denied. Multiple times after that appointment, Plaintiff alleges that he sought medical attention for a variety of symptoms associated with hepatitis "C" but was only provided Pepto-Bismol and Ibuprofen capsules. Suffering from nausea, vomiting, stomach pain, and diarrhea, Plaintiff states that he "again" declared himself a medical emergency. At some point, Plaintiff indicates that he wrote a letter to Assistant Warden Kelly describing "... the physical symptoms he was suffering as a result of inflammation of the liver." Kelly responded to that missive by merely advising Plaintiff to attend routine sick call. (*Id.* at pp. 3-4).

In July of 2019, Plaintiff states that he attended yet another appointment with Dr. Cleveland and an unnamed nurse to discuss the symptoms noted above. More blood tests were ordered at that time, the results of which Plaintiff was awaiting at the time that he drafted his complaint. Plaintiff maintains that he continues to suffer from a variety of symptoms associated with hepatitis "C" and, upon "information and belief," his liver functioning will continue to deteriorate if he is not provided with appropriate treatment. (*Id.* at pp. 4-5). For the alleged violation of his Eighth Amendment rights, Plaintiff seeks: (1) declaratory relief respecting the purported violation; (2) injunctive relief in the form of (a) an examination by a healthcare official who is not affiliated with the DOC and (b) genetic testing to determine the strain or genotype of HBV and HCV from which he suffers

so he can be treated with direct-acting antiviral agents such as Harvoni or other appropriate medications; and (3) compensatory and punitive damages. (*Id.* at pp. 5-6).

Citing 28 U.S.C. §1915(e) and Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, Defendants now move for the dismissal of Plaintiff's complaint on various grounds, which will be addressed in a slightly different order from that in which they were presented to the Court. First, with respect to Defendant, RCC, the law is well-settled that in order to set forth a cognizable claim under §1983, an aggrieved party must allege that the defendant, a "person" acting under color of state law and in accordance with an established state procedure, deprived him of the rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 664 (1986). On that score, correctional facilities like the RCC are not considered to be "persons" within the meaning of §1983 as they are buildings and not entities or persons capable of being sued as such. *Sanders v. Rayburn Correctional Center*, No. 13-CV-6122, 2014 WL 2700848 at *2 (E.D. La. Jun. 13, 2014); *Demouchet v. Rayburn Correctional Center*, No. 07-CV-1694, 2008 WL 2018294 at *2 (E.D. La. May 8, 2008). In light of these authorities, it will be recommended that Plaintiff's §1983 claim against RCC be dismissed as frivolous and for failure to state a claim under §1915(e) and Rule 12(b)(6). *Id.*

The individuals named as Defendants in this matter are all employees of the state. As to them, Plaintiff's §1983 claims against the Defendants in their official capacity are barred by the Eleventh Amendment. *Lewis v. Todd*, No. 19-CV-2423, 2019 WL 5430650 at *2 (E.D. La. Sept. 26, 2019), *adopted*, 2019 WL 5425476 (E.D. La. Oct. 23, 2019)(citing

*Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 313-14 (5th Cir. 1999)).[4/] Because the sovereign immunity bestowed by the Eleventh Amendment deprives a court of jurisdiction, the claims so barred are properly dismissed without prejudice. *Warnock v. Pecos County, Texas*, 88 F.3d 341, 343 (5th Cir. 1996); *Kervin v. City of New Orleans*, No. 06-CV-3231, 2006 WL 2849861 at *2-4 (E.D. La. Sept. 28, 2006). It will therefore be recommended that Plaintiff's §1983 claims against LeBlanc, Tanner, Beverly, and Cleveland in their official capacity be dismissed without prejudice for lack of jurisdiction.

Turning to Plaintiff's §1983 claims against the individual Defendants in their individual capacity, the allegations that he presents reveal that neither LeBlanc, Tanner, nor Kennedy were directly involved in the provision of medical care to him; rather, LeBlanc and Tanner only passed upon an ARP grievance Plaintiff had initiated regarding the treatment provided by Dr. Cleveland and Kennedy's role was limited to responding to a letter Plaintiff had written regarding the efficacy of that treatment. Inmates like Plaintiff, however, have no constitutional right to an adequate and effective grievance procedure or to have their complaints investigated and resolved to their satisfaction. *Propes v. Mays*, 169 Fed.Appx. 183, 184-85 (5th Cir. 2006); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005); *Lewis*, 2019 WL 5430650 at *4; *Tyson v. Tanner*, No. 08-CV-4599, 2009 WL 2883056 at *5 (E.D. La. Aug. 25, 2009). Accordingly, Plaintiff's §1983 claims against LeBlanc, Tanner, and Kennedy in their individual capacity should be dismissed as frivolous and for failure to state a claim under §1915(e) and Rule 12(b)(6).

---

[4/] In addition, neither states, their departments, nor their officials acting in their official capacity are considered to be "persons" within the meaning of §1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989); *Anderson v. Phelps*, 655 F.Supp. 560, 563-64 (M.D. La. 1985).

5

With the foregoing recommended dismissals, that leaves before the Court Plaintiff's §1983 claim against Dr. Cleveland regarding the adequacy of the medical care that he has received for hepatitis "B" and "C." In order to get a better understanding of the nature and extent of the medical care that Plaintiff has received at RCC, the Court previously issued an order that it, as well as Plaintiff, be provided with a copy of his medical records. (Rec. doc. 15). Those records are now before the Court. (Rec. doc. 16).[5/]

The medical records provided to the Court number over 200 pages. They reveal that Plaintiff has been seen and received treatment for a variety of conditions while housed at RCC, including consultations with Neurology, ENT, and Urology clinics; physical therapy; surgical intervention; audible testing; and, a colonoscopy. A "Problem List" contained within the records indicates that hepatitis "C" was "not detected" following testing on March 12th and that condition was declared to be "resolved" in December of 2016. On December 13, 2016, a licensed practical nurse employed by RCC responded to a letter Plaintiff had written and advised him that labwork done on September 13, 2014 showed that hepatitis "C" was not detected. On March 6, 2017, an RCC registered nurse responded to yet another letter Plaintiff had written regarding his hepatitis "C" status, advising him that he had been tested for both viruses on December 24, 2016 and that the results had come back as undetectable.

---

[5/] The Court may properly rely on such records in evaluating an inmate's allegations of deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 n. 24 (5th Cir. 2006); *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). By doing so, Defendants' request for dismissal under Rule 12(b)(6) is effectively converted to a one for summary judgment under Rule 56. FRCP 12(d); *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1283-84 (5th Cir. 1990). In the present case, Plaintiff was provided with a copy of the Court's order requesting his medical records and this Report and Recommendation is being issued well beyond the submission date on Defendants' motions as well as the date on which opposition memoranda were due under Local Rule 7.5. The issuance of the Report and Recommendation will also afford Plaintiff additional time within which to file objections.

The medical records further reflect that on January 6, 2018, Plaintiff refused to submit to a recommended sleep study. On January 11, 2018, Plaintiff was seen by an RCC physician for complaints of left ear pain and sinus drainage as well as right bicep pain and atrophy. He was placed on Augmentin and x-rays of the arm were ordered. Those studies of the right humerus and elbow were performed on January 23, 2018 and produced normal results. Pursuant to a referral from the RCC physician, on February 1, 2018, Plaintiff was seen at the Lallie Kemp Regional Medical Center Urology Department for evaluation of urinary dysfunction; Flomax was prescribed.

On February 26, 2018, Plaintiff was seen again by the RCC physician for a medication review and for complaints right bicep pain. Medications at the time numbered 15 and although a history of hepatitis "B" and "C" was noted, recent tests were negative for the HCV virus. Dr. Cleveland did refer Plaintiff to the Ultrasound Department for studies of his right bicep. Initial testing on March 13, 2018 was positive for HBV and HCV but on further testing, no evidence of the viruses was detected. On March 20, 2018, Plaintiff was placed on suicide watch/administrative segregation for an unidentified prison rule violation. Due to the presence of nausea, vomiting, and dizziness, Plaintiff declined an off-site medical evaluation on March 28, 2018.

Plaintiff was next seen at the RCC Medical Department on April 8, 2018 pursuant to a "Health Care Request Form" that he submitted for complaints of stomach cramps, diarrhea, and nausea "(liver concern)" and urinary complications with pain in the lower abdomen. Plaintiff subsequently initiated an ARP grievance on April 11, 2018 regarding the care he had received for hepatitis but the processing of that grievance was held in abeyance because an earlier grievance he had submitted was still pending at that time. He

was seen again at routine sick call on May 15, 2018 for continuing epigastric discomfort and urinary issues. It was noted that Plaintiff was taking Prilosec at this time. At his next visit with an RCC doctor on June 4, 2018 in connection with the foregoing complaints, it was documented that Plaintiff was "very non-complaint" with his medications; Ditropan XL was prescribed.

A "Medical Progress Note" reveals labwork conducted on June 12, 2018 that produced an APRI Score of 0.267 and contained a notation that Plaintiff's condition would continue to be monitored annually by the Hepatitis Nurse Practitioner despite that insignificant reading. An ultrasound performed on June 13, 2018 demonstrated normal right bicep muscle tissue. On July 2, 2018, Plaintiff refused four medications that had been prescribed to him. Around this time, the backlog of Plaintiff's previous ARP grievance appears to have abated as evidenced by Kelly's July 16, 2018 memorandum to an ARP screening officer explaining that while Plaintiff had previously been diagnosed with an infectious disease, his body had rid itself of the affliction such that no further treatment was needed in spite of his multiple complaints. On July 18, 2018, Plaintiff was seen again in the RCC Medical Department for acid reflux and hypertension; the diagnosis included GERD for which Plaintiff was prescribed Prilosec. As noted earlier (note 2, *supra*), on July 25, 2018, Deputy Warden Bickham denied Plaintiff's April 11, 2018 grievance at Step 1, explaining that Plaintiff's labwork was negative for the presence of hepatitis "B" and "C" and that, therefore, no treatment was necessary. Dissatisfied with that response, Plaintiff proceeded to Step 2 of the ARP process which was denied on September 14, 2018. (*See* note 3, *supra*).

Pursuant to another sick call request form that Plaintiff submitted for complaints of a sinus infection, headaches, nasal congestion, trouble swallowing, nausea, and to obtain the results of his bicep ultrasound, Plaintiff was seen again by RCC medical personnel on October 25, 2018.  At that time, Plaintiff's medications included Zyrtec, Claritin, Sudafed, nasal spray, ear drops, and Ibuprofen.  Plaintiff was instructed to keep a follow-up appointment that had been scheduled with a RCC physician.  That appointment went forward on December 3, 2018 with the major complaints at the time being chronic sinus congestion, a left earache for two months, and acid reflux although Zantac was reported as effective for that condition.  Plaintiff was instructed to discontinue Prilosec and to continue taking Zantac and the possibility of H. pylori was to be explored.  In another sick call form approximately one week later, Plaintiff complained of "very bad liver burns" and nausea which he was concerned were associated with hepatitis "B" and "C."  Following further evaluation by RCC medical staff, Plaintiff was administered Maalox and another appointment with a RCC physician was scheduled.  By the time of that appointment on December 15, 2018, labwork had revealed the presence of H. pylori for which Plaintiff was prescribed Prilosec, Biaxin, and Amoxil; further testing was scheduled.

Plaintiff was seen again by the RCC physician on February 4, 2019 and reported that his GERD had not improved with medications or with H. pylori treatment and that he was still experiencing nausea, pain, and burning.  The assessment was GERD.  In light of Plaintiff's continued  complaints, he was referred for evaluation at an outside Gastroenterology Clinic.  A further referral to the EGD/Colonoscopy Clinic was made on March 11, 2019.  Plaintiff subsequently submitted another sick call request form complaining of sleep apnea and breathing complications, a change to his blood pressure

medication, and to check on the status of the right bicep testing. Plaintiff was evaluated for those concerns on March 21, 2019 and further evaluation with an RCC physician was scheduled. Plaintiff was late for sick call on May 29, 2019 but refused to designate himself a self-declared emergency ("SDE") and was thus not seen by medical personnel that day.

Plaintiff was seen again by RCC medical staff on July 15, 2019, an appointment that included a medication review for the approximately 15 medications he was then taking. His blood pressure medication was changed as Lisinopril made him nauseous. Other complaints at the time included continued right bicep pain despite normal ultrasound results and right ankle pain for five days after Plaintiff had stepped in a hole. The impression was poorly controlled hypertension, fairly controlled hypersensitivity lung disease, and right arm and bicep atrophy and pain. In light of these complaints, Plaintiff was referred to the Orthopedic Clinic and an x-ray of his right ankle was to be taken as soon as possible. Among the medical records generated on this date is a "note-to-file" authored by a RCC registered nurse in which she documented an encounter that day with Plaintiff who had approached her in her office and inquired about treatment for hepatitis. Nurse Wheat reminded Plaintiff that the last lab work that was performed in 2018 revealed HBV VL and HCV VL to be undetectable. She further explained that recent research had established that the body of an infected individual was able to rid itself of the virus. Plaintiff, however, was skeptical of this advice and told the nurse that she was "contradicting" herself. Nurse Wheat additionally explained to Plaintiff that even though his hepatitis "C" AB results would likely come back as positive due to his history of being infected with the disease, as long as his viral load shows HCV to be non-detectable, then he is considered to be no longer infected. The nurse assured Plaintiff that he would continue

to be tested for the virus and that treatment *vel non* would be determined by his viral load. Plaintiff verbalized his understanding of the foregoing.

The subject matter of Plaintiff's next sick-call request form was a swollen/twisted ankle and sharp pain in the back for which he was seen on July 24, 2019. An x-ray of Plaintiff's ankle remained pending and he declined Motrin or Tylenol for relief of his back pain. Despite having agreed to an evaluation at an off-site Orthopedic Clinic on July 15, 2019, when summoned for transportation for that visit on July 26, 2019, Plaintiff refused because he was expecting a visitor later that day. That refusal resulted in Plaintiff being subject to a prison disciplinary charge of aggravated disobedience, the result of which is not apparent from the records provided to the Court. Further blood work was done on July 29, 2019, which produced a positive but abnormal result for hepatitis "B," a high result for hepatitis "C," and a high result for H. pylori. In light of the hepatitis "C" result, it was recommended that follow-up testing be conducted in the form of a HCV Nucleic Acid Amplification ("HCV NAA") test. Pursuant to another sick call request form concerning chest pain, a rapid heartbeat, and a swollen ankle, Plaintiff was evaluated again by RCC medical staff on August 7, 2019. Additional testing was scheduled. X-rays of the right ankle were taken the following day which revealed no evidence of fracture or dislocation, only lateral soft tissue swelling. Further radiographic studies of Plaintiff's right humerus were done on August 20, 2019 which revealed muscular atrophy anteriorly near the biceps region but soft tissues otherwise being normal.

On August 26, 2019, Plaintiff underwent further evaluation from a RCC physician for monitoring of his hypertension, H. pylori with GERD, and HCV status. In light of his ongoing GI issues despite treatment, Plaintiff was referred to the Gastroenterology Clinic and was to

have an ultrasound of the liver and HCV NAA testing. In the medical documentation from this date, it was noted that Plaintiff had suffered from acid reflux since 1998. The requested HCV NAA testing went forward on September 2, 2019 which resulted in a negative/"not detected" result. Yet another "Health Care Request Form" was subsequently submitted by Plaintiff for complaints of chest pain, sleep apnea, and nausea. Plaintiff was seen for those complaints on September 3, 2019 during which he questioned whether the change in his blood pressure medications was causing him to feel lightheaded. Plaintiff refused Maalox for his upset stomach, taking Prilosec instead. Following further physician evaluation on September 16, 2019, Plaintiff was referred to the ENT Clinic for his chronic sinusitis and for a sleep study. An abdominal ultrasound was performed on September 24, 2019 which revealed Plaintiff's liver to be of normal size and a homogeneous texture with no measurable defined masses detected.

A follow-up appointment for Plaintiff's chronic sinusitis went forward on October 24, 2019 and he was referred to the CT Clinic for a scan. That testing was done on November 26, 2019 and Plaintiff was returned to RCC in stable condition. He was then seen at the EGD Clinic on January 9, 2020 which rendered a diagnosis of GERD, a history of H. pylori, and hemorrhoids. Protonix was prescribed. The final medical record provided to the Court reflects an additional referral to the Gastroenterology Clinic on February 4, 2020.

It is against the backdrop of the foregoing medical records, records upon which the Court may properly rely, *Gobert*, 463 F.3d 346 n. 24, that the sufficiency of the allegations made by Plaintiff against Dr. Cleveland be measured. In order to establish a constitutional violation, Plaintiff must demonstrate that the Defendant was deliberately indifferent to his serious medical needs which constituted an unnecessary and wanton infliction of pain.

*Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 2323 (1991). Deliberate indifference is an "extremely high" standard to meet, *Gobert*, 463 F.3d at 346, one that has been equated with "subjective recklessness" as that term is used in criminal law. *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997). A prison official shows deliberate indifference if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979 (1994).

"Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346 (footnote omitted). "An incorrect diagnosis by prison medical personnel [similarly] does not suffice to state a claim for deliberate indifference." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)(citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). If an inmate in fact receives medical treatment, federal constitutional protections are not violated simply because that treatment was unsuccessful or because pain or other symptoms persist despite the treatment. *Gobert*, 463 F.3d at 345; *Williams v. Chief of Medical Operations, Forrest County Jail*, No. 94-10115, 1994 WL 733493 at *2 (5th Cir. Dec. 27, 1994); *Kron v. Tanner*, No. 10-CV-0518, 2010 WL 3199854 at *7 (E.D. La. May 19, 2010), *adopted*, 2010 WL 3171040 (E.D. La. Aug. 6, 2010). That an inmate's medical care "… may not have been the best money could buy" is insufficient to establish a constitutional violation, *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992), and a prisoner is not entitled to medical treatment of his choosing simply upon request. *Stafford v. Kelly*, No. 09-CV-0133,

13

2011 WL 2633034 at *2 (N.D. Miss. June 3, 2011), *adopted*, 2011 WL 2633174 (N.D. Miss. July 5, 2011). Nor does the failure to provide a specialist in the field of an inmate's choosing state a claim for deliberate indifference. *Green v. McKaskle*, 788 F.2d 1116, 1127 (5th Cir. 1986).

Applying these authorities to the matter at hand, no colorable claim of deliberate indifference on the part of Dr. Cleveland is apparent here. "It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs." *Gillis v. Goodwin*, No. 13-CV-2506, 2015 WL 3622675 at *3 (W.D. La. Jun. 9, 2015). Moreover, "… disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs." *Id.* at *2 (citing *Norton*, 122 F.3d at 292). Pertinent to this matter, "… the decision whether to provide additional treatment 'is a example of a matter for medical judgment.'" *Domino*, 239 F.3d at 756 (quoting *Estelle*, 429 U.S. at 107, 97 S.Ct. at 293). The voluminous records provided to the Court demonstrate that jail officials were attentive to Plaintiff's medical needs, treating him for a variety of conditions at RCC and referring him to outside specialists as necessary. There is no showing that Dr. Cleveland "'… refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Even the "'failure to alleviate a significant risk that [the official] should have perceived, but did not' is insufficient to show deliberate indifference." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 838, 114 S.Ct. 1970, 1979 (1994)). Where an inmate like Plaintiff has admittedly been examined on numerous

occasions, the Court is hardly in a position to second-guess the decisions of professional medical personnel, particularly as to whether a specific symptom that he suffered was attributable to hepatitis "C" as opposed to his long-standing GERD or H. pylori. *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985). Plaintiff's allegations regarding his medical care amount to a disagreement with the treatment provided and are insufficient to show a constitutional violation. *Grumbles v. Livingston*, 706 Fed.Appx. 818, 820 (5th Cir. 2017)(failure to provide inmate with medications that could cure hepatitis "C" not a constitutional violation); *Hendrix v. Lloyd Aschberger, P.A.*, 689 Fed.Appx. 250 (5th Cir. 2017); *Randall v. Behrns*, 141 Fed.Appx. 307, 309 (5th Cir. 2005), *cert. denied*, 547 U.S. 1100, 126 S.Ct. 1885 (2006); *Ferguson v. Arce*, 101 Fed.Appx. 980, 981 (5th Cir. 2004)(disagreement with treatment for hepatitis "C" insufficient to establish deliberate indifference); *Davidson v. Texas Dept. of Crim. Jus., Inst. Div.*, 91 Fed.Appx. 963, 964-65 (5th Cir.), *cert. denied*, 543 U.S. 864, 125 S.Ct. 543 (2004).

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that Defendants' motions be granted and that Plaintiff's §1983 claim against the RCC be dismissed with prejudice.

It is further recommended that Plaintiff's §1983 claims against the individual Defendants in their official capacity be dismissed without prejudice for lack of jurisdiction and that his §1983 claims against the individual Defendants in their individual capacity be dismissed with prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error,

from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[6]

New Orleans, Louisiana, this  17th  day of            April           , 2020.

                                  MICHAEL B. NORTH
                             UNITED STATES MAGISTRATE JUDGE

---

[6] *Douglass* referenced the previously-applicable 10-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.

16